**UNITED STATES of America, Plaintiff-Appellant (84–5033), Plaintiff-Appellee (84–5400/5401),**

v.

**James E. GRAY and Charles J. McNally, Defendants-Appellees (84–5033), Defendants-Appellants (84–5400/5401).**

Nos. 84–5033, 84–5400 and 84–5401.

United States Court of Appeals,
Sixth Circuit.

Argued July 30, 1985.

Decided May 12, 1986.

Rehearing and Rehearing En Banc Denied June 27, 1986 in No. 84–5033.

Louis DeFalaise, Jane Graham (argued), U.S. Attys., Lexington, Ky., Christopher G. Caldwell, Marshall Jarrett (argued), Lee J. Radek, Jo Ann Farrington, U.S. Dept. of Justice, Public Integrity Section, Washington, D.C., for the U.S.A.

William E. Johnson, Frankfort, Ky., James Shuffett (argued), Shuffett and Shuffett, Michael D. Baker, Lexington, Ky., for Gray.

Frank E. Haddad, Jr. (argued), Louisville, Ky., James Baker, Frankfort, Ky., for McNally.

Before JONES and KRUPANSKY, Circuit Judges, and NEESE, Senior (retired District) Judge.*

PER CURIAM.

Defendants James E. Gray (Gray) and Charles J. McNally (McNally) appealed their jury convictions on one count of con-

---

* Hon. Charles G. Neese, Senior (retired District) Judge from the Eastern District of Tennessee, sitting by designation.

spiring to devise a scheme to defraud in violation of 18 U.S.C. § 371 and one count of aiding and abetting in the use of the mails to defraud in violation of 18 U.S.C. §§ 2 and 1341. The United States, in a separate appeal, challenged the trial court's dismissal of six counts of substantive mail fraud charged in the indictment.

Since 1971, Kentucky had purchased workmen's compensation insurance through the Wombwell Insurance Agency of Lexington, Kentucky (Wombwell). The policy was awarded to Wombwell after its vice president, Robert Tabeling (Tabeling), agreed with certain political leaders then in power to pay a percentage of the commission resulting from the policy to other insurance agents as designated by those politicians.

The operative facts are easily summarized. In 1974, Julian M. Carroll became governor of Kentucky. Shortly thereafter, Howard P. "Sonny" Hunt (Hunt)[1] was selected Kentucky Democratic Party Chairman. To ensure awarding the Kentucky workmen's compensation insurance policy to Wombwell, Tabeling conferred with Hunt on several occasions during the spring of 1975 to discuss the subject. At one of those meetings, Hunt advised Tabeling and Joseph H. Wombwell that Wombwell could retain the workmen's compensation insurance policy for the forthcoming year, commencing July 1, 1975, and thereafter if it would agree to "share" or kickback a percentage of the insurance commissions. Tabeling and Wombwell agreed to service the policy for $50,000 per year. In turn, Wombwell agreed to pay all commissions it received in excess of $50,000 per year to any authorized insurance agencies specified by Hunt. This arrangement was maintained, with minor adjustments, throughout the Carroll Administration.

From 1975 to 1979, the annual award of the workmen's compensation insurance pol-

---

1. Hunt pled guilty to one count of intangible rights mail fraud for his role in the scheme which is the focal point of the instant case.

icy followed a set procedure. Insurance Commissioner Harold McGuffey (McGuffey) received directions from Hunt, who consistently directed McGuffey to award the workmen's compensation insurance policy to Wombwell, and McGuffey would execute Hunt's decision. Wombwell then contracted with an insurance underwriting company, the Hartford Insurance Group, to write the policy.

During the Carroll Administration, Hunt directed Wombwell to pay twenty-one separate designated insurance agencies the sum of $851,000 from the commissions resulting from the workmen's compensation insurance policy premium payments it received for the period here in issue. Of the $851,-000 of excess commissions paid by Wombwell to the other agencies, nine checks totaling $200,000 were issued to Seton Investments, Inc.

The success of defendants' scheme depended upon the use of the mails to convey commission checks from the Hartford's home office in Connecticut to Wombwell's office in Kentucky.

The government originally stipulated that McNally "was an officer, director, and sole recorded stockholder of Seton" from September, 1975 to December, 1981. However, during the trial, the government's evidence developed that Hunt and Gray were, in fact, the primary parties that controlled Seton and that McNally did not become associated with Seton until late 1977 or 1978. McNally received $77,500 in return for acting as Seton's frontman. The payments were made to him through the Snodgrass Insurance Agency, which received commission checks from Wombwell at Hunt's direction after McNally had prevailed upon his friendship with Ronald Snodgrass to permit his agency to act as a conduit for the $77,500 McNally received. McNally had assured Snodgrass that the procedure was not in violation of law.

The payments received by Seton from Wombwell were used to purchase a condominium in Lexington, Kentucky, another condominium in Juno Beach, Florida and a 1976 Ford Country Squire station wagon for use at the Florida Condominium. The condominiums and the station wagon were exclusively at the disposal of Gray and Hunt. In addition to the foregoing, Seton gratuitously provided Hunt's son Alan with seven checks totaling $38,500.

In January of 1976, Governor Carroll appointed Gray as Secretary of Public Protection and Regulation. While Secretary of Public Protection and Regulation, Gray had supervisory authority over McGuffey. Gray also served as Secretary of the governor's cabinet from January of 1977 until August of 1978. For approximately thirteen months Gray occupied both of these positions. Although McNally, a Prestonburg, Kentucky businessman, served in no public office, he was a staunch political ally of Governor Carroll.

Defendants Gray and McNally were indicted by a federal grand jury on June 30, 1983. Count one of the indictment charged that defendants Gray and McNally "did knowingly, willfully and unlawfully conspire, ... with each other and with ... Hunt ... to commit certain offenses against the United States" with the following objectives:

a. To devise and intend to devise a scheme and artifice to:

(1) defraud the citizens of the Commonwealth of Kentucky and its governmental departments, agencies, officials and employees of their right to have the Commonwealth's business and its affairs conducted honestly, impartially, free from corruption, bias, dishonesty, deceit, official misconduct, and fraud; and (2) defraud the citizens of the Commonwealth of Kentucky, and its governmental departments, agencies, officials and employees, of their right to have available and to be made aware of all relevant and pertinent facts and circumstances when selecting an insurance agent to write the Commonwealth of Kentucky's Workmen's Compensation Insurance Policy; when committing and expanding the funds of the Commonwealth of Kentucky to pay for said insurance; and,

(3) obtain, directly and indirectly, money and other things of value, by means of false and fraudulent pretenses, representations, and promises, and the concealment of facts.

And, for the purpose of executing the aforesaid conspiracy, the Defendants, James E. Gray and Charles J. McNally, and Howard P. "Sonny" Hunt, Jr. and others, did place and cause to be placed in a post office or authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and did take and receive and cause to be taken and received therefrom such matters and things and did knowingly cause to be delivered by mail according to the direction thereon and at the place at which it was directed to be delivered by the person to whom it was addressed, matters and things.

b. To defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental functions of the Internal Revenue Service of the Treasury Department of the United States of America, (Hereinafter the Internal Revenue Service) in the ascertainment, computation, assessment, and collection of federal taxes.

Counts two through eight detailed seven separate charges of aiding and abetting the substantive offense of mail fraud in violation of 18 U.S.C. § 2 and § 1341. Count four alleged mail fraud in connection with the mailing of a commission check addressed to Wombwell. Counts two, three, five, six, seven and eight alleged mail fraud in connection with the mailing of Seton's corporate tax returns.

On December 16, 1983, the district court dismissed counts two, three, five, six, seven and eight because the indictments failed to allege that Seton's tax returns identified in those substantive charges were themselves false or fraudulent. A jury trial on counts one and four commenced on January 23, 1984. On March 6, 1984, defendants Gray and McNally were convicted on both counts.

As outlined in Count one of the indictment, Gray and McNally were charged with conspiring to commit acts of mail fraud the object of which was to deny the citizens of Kentucky certain "intangible rights," such as the right to have the Commonwealth's business conducted honestly, impartially and free from corruption and official misconduct, together with the right to a full and complete disclosure of the practices and procedures employed in awarding the state's workmen's compensation insurance policy. Courts have long interpreted the mail fraud statute, 18 U.S.C. § 1341, as proscribing schemes to defraud the citizens of their intangible rights to honest and impartial government. *See, e.g., United States v. Von Barta*, 635 F.2d 999, 1005–06 (2d Cir.1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981); *United States v. Mandel*, 591 F.2d 1347 (4th Cir.1979), *aff'd in relevant part*, 602 F.2d 653 (4th Cir.1979) (en banc), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); *United States v. Keane*, 522 F.2d 534 (7th Cir. 1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976); *United States v. States*, 488 F.2d 761, 766 (8th Cir.1973), *cert. denied*, 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974); *Shushan v. United States*, 117 F.2d 110, 115 (5th Cir.), *cert. denied*, 313 U.S. 574, 61 S.Ct. 1086, 85 L.Ed. 1532 (1941).

The cited cases are premised on an underlying theory that a public official acts as "trustee for the citizens and the State ... and thus owes the normal fiduciary duties of a trustee, *e.g.*, honesty and loyalty" to the citizens and the State. *United States v. Mandel*, 591 F.2d at 1363. The logic continues that, as the *cestui*, the public is entitled to the faithful and disinterested services of government servants and employees, and a public official may not deprive the public of its rights. As succinctly explained by the Seventh Circuit:

A scheme to defraud the citizenry and government of an intangible right, such as honest service, can be contrasted with a scheme to obtain tangible property through fraud. A scheme to obtain

tangible property is cognizable under the mail fraud statute regardless of the relationship between the defendant and his victim. In contrast, an intangible rights scheme is only cognizable when at least one of the schemers has a fiduciary relationship with the defrauded person or entity.

*U.S. v. Alexander,* 741 F.2d 962, 964 (7th Cir.1984) (citations omitted).

■ Within the above context, the "intangible rights" theory is anchored upon the defendant's misuse of his public office for personal profit. "This doctrine of the deprivation of honest and faithful service has developed to fit the situation in which a public official avails himself of his public position to enhance his private advantage...." *United States v. Dixon,* 536 F.2d 1388, 1400 (2d Cir.1976). Conversely, misconduct of a fiduciary in the administration of exclusively private matters in his capacity as a private individual which does not involve the misuse of public office or public trust, is not actionable as a violation of the mail fraud statute under an intangible rights theory. *United States v. Rabbitt,* 583 F.2d 1014, 1024 (8th Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

■ A mail fraud conviction can be supported by proof that a fiduciary who is charged with a public trust deliberately concealed facts to personally benefit from the actions of a public official or public entity. Under such circumstances, the public fiduciary breaches the public trust by intentionally avoiding a full and complete disclosure of conflicts of interest arising from surreptitiously conceived and implemented agreements calculated to generate personal gains at the expense of the public. *United States v. Mandel,* 591 F.2d 1347, 1364 (4th Cir.1979).

■ Only one member to the conspiracy need be a public fiduciary to support an intangible rights mail fraud indictment against all members of the conspiracy. As explained by the Seventh Circuit in *U.S. v. Alexander,* 741 F.2d at 964: "[t]here can be no doubt that a non-fiduciary who

schemes with a fiduciary to deprive the victim of intangible rights is subject to prosecution under the mail fraud statute."

In the instant case, the government predicated liability on both Gray's actual fiduciary status as an appointed public official who actively participated in the conspiracy and Hunt's fiduciary status as a de facto public official. The evidence adduced at trial demonstrated beyond a reasonable doubt that the awarding of workmen's compensation insurance policy was within Gray's supervisory authority as Secretary of Public Protection and Regulation or as Secretary to the Governor's Cabinet, that Seton received commissions from the policy, that Gray failed to disclose his ownership interest in Seton, and that McNally aided and abetted Gray in perpetrating this fraud.

■ On appeal, defendants argued that Hunt was not a public official and hence, had no fiduciary duty to the public. However, serving in public office should not be a rigid prerequisite to impressing a fiduciary duty upon individuals closely aligned with governmental activities. Rather, an individual who has no formal employment relationship with government may nonetheless substantially participate in government operations so as to assume a fiduciary duty to the general citizenry. *United States v. Margiotta,* 688 F.2d 108 (2d Cir. 1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983).

In *Margiotta,* the Chairman of the Republican Committee of Nassau County and the Town of Hempstead, New York appealed his mail fraud conviction, asserting that he had no fiduciary duty to the general citizenry of Nassau County and the Town of Hempstead. As County and Township Republican Chairman, Margiotta had sufficient authority and prestige to exert substantial influence over public officials in Hempstead and Nassau County. Exercising his influence, Margiotta directed a public official to appoint a specific insurance agency as Broker of Record for the County and the Town. Thereafter, at Margiotta's

command, the insurance agency distributed more than five hundred thousand dollars in kickbacks to both Margiotta and his political allies. The Second Circuit concluded that, although not a public official, Margiotta was subject to prosecution for intangible rights mail fraud as a public fiduciary.

Recognizing that there was no black letter rule for imposing a fiduciary responsibility upon a relationship between an influential political personality and the public, the Second Circuit offered the following guidelines:

> Although there is no precise litmus paper test, two time-tested measures of fiduciary status are helpful: (1) a reliance test, under which one may be a fiduciary when others rely upon him because of a special relationship in the government, and (2) a de facto control test, under which a person who in fact makes governmental decisions may be held to be a governmental fiduciary.... These tests recognize the important distinction between party business and government affairs, permitting a party official to act in accordance with partisan preferences or even whim, up to the point at which he dominates government. Accordingly, the reliance and de facto control tests carve out a safe harbor for the party leader who merely exercises a veto power over decisions affecting his constituency.

*Margiotta*, 688 F.2d at 122. (citations omitted).

■ The evidence adduced at this trial demonstrated beyond a reasonable doubt that Hunt substantially participated in governmental affairs and exercised significant, if not exclusive, control over awarding the workmen's compensation insurance contract to Wombwell and the payment of monetary kickbacks to Seton. Hunt testified that he had directed McGuffey to

award the workmen's compensation policy to Wombwell and that he had further directed Wombwell as to the amounts and manner in which the excess premium commissions were to be distributed. Hunt's exclusive domination over the government operation, as corroborated by the testimony of McGuffey, Tabeling, Gray and McNally, placed him into the position of a de facto public official who assumed a fiduciary duty to the citizens of Kentucky. The evidence further demonstrated that Hunt failed to disclose his ownership interest in Seton, that Seton received kickbacks from the commission payments paid on the policies here in issue and that Gray and McNally aided and abetted Hunt's fraud.[2]

Defendants on appeal argued that their due process rights were infringed because the indictment was not "a plain, concise and definite written statement of the essential facts constituting the offense charged" as mandated by Fed.R.Crim.P. 7(c). Specifically, defendants urged that the indictment failed to allege that Hunt or Gray owed a fiduciary duty to the citizens of Kentucky or that the information which these individuals withheld from the public was material, and further omitted reference to the "intangible rights doctrine."

■ An indictment provides adequate notice to a defendant "when it permits the defendant to obtain 'significant protections which the guarantee of a grand jury indictment was intended to confer.'" *United States v. Piccolo*, 723 F.2d 1234, 1238 (6th Cir.1983), *cert. denied*, 466 U.S. 970, 104 S.Ct. 2342, 80 L.Ed.2d 817 (1984) (quoting *Russell v. United States*, 369 U.S. 749, 768, 82 S.Ct. 1038, 1049, 8 L.Ed.2d 240 (1962)). The sufficiency of an indictment is governed by two "preliminary criteria":

> [F]irst, whether the indictment "contains the elements of the offense intended to

---

**2.** The indictment in the case at bar charged a conspiracy encompassing two objects: (1) a scheme to deprive the citizenry of Kentucky of certain intangible rights, and (2) a scheme to impair the federal government in the assessment of taxes. Because the government had demonstrated beyond a reasonable doubt that the defendants engaged in a conspiracy with the purpose of depriving the citizens of their intangible rights, it is not now necessary to consider defendants' contention that the evidence was insufficient to support a conviction based on the tax objectives alleged in the indictment.

be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"

*Russell,* 369 U.S. at 763–64, 82 S.Ct. at 1046–47.

■ The indictment in the case at bar presented the defendants with more than adequate notice of the offenses charged. The conspiracy count identified the principal co-conspirators, described their official positions, and specified both the detailed operations and objectives of the conspiracy. The mail fraud count disclosed similar factual details. In addition, a bill of particulars, provided at defendants' request, identified Hunt, Gray, and McGuffey as the potential fiduciaries alluded to in the indictment, explained the use of the term "excess commissions", provided defendants with a list of government witnesses, and disclosed other details about the case. In light of the foregoing, defendants cannot complain that they were not placed on notice of the charges against them. *See U.S. v. Goss,* 650 F.2d 1336, 1346 n. 11 (5th Cir.1981) (Although indictment did not cast fraudulent scheme in terms of a breach of a fiduciary duty, it nonetheless apprised the defendant of the charges against him.).

■ Defendants also charged that the indictment was constructively amended during trial. The Fifth Amendment provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." U.S. Const. Amend. V. Thus, a conviction cannot stand if it is based on an offense which is not charged in the grand jury's indictment. *United States v. Miller,* — U.S. —, 105 S.Ct. 1811, 1819, 85 L.Ed.2d 99 (1985).

■ In *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the Court stated that the charges in an indictment cannot be broadened through amendment except by the grand jury itself.

Where a conviction is for an offense materially at variance with the offense charged in the indictment, it should be considered as unconstitutionally broadened and the conviction should be reversed. *Miller,* 105 S.Ct. 1817.

■ Defendants alleged further that the indictment was constructively amended because the government introduced evidence relating to Hunt's fiduciary duty and the actual ownership of Seton. However, as noted above, the indictment presented defendants with adequate notice of the essential elements of the offenses on which they were tried. Although the evidence concerning Hunt's fiduciary duty and the actual ownership of Seton was material to defendant's guilt, the same evidence was also admissible as to the charges incorporated in counts one and four of the indictment.

■ Defendants also asserted that count four of the indictment was constructively amended by the district court's jury instructions relating to that count. Initially, it should be noted that no timely objection was taken to the court's charge. Moreover, jury instructions in a criminal case should not be analyzed in isolation, but rather must be evaluated in the context of the overall charge. *Engle v. Koehler,* 707 F.2d 241 (6th Cir.1983), *aff'd,* 466 U.S. 1, 104 S.Ct. 1673, 80 L.Ed.2d 1 (1983), (citing *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). Because the instructions, when taken as a whole, did not create a substantial likelihood that defendants would be convicted of a crime not alleged in the indictment, this court concludes that count four of the indictment was not constructively amended. *United States v. Beeler,* 587 F.2d 340, 342 (6th Cir.1978).

In its appeal, the government assigned as error the district court's dismissal of counts two, three, five, six, seven and eight of the indictment. Those counts of the indictment charged that the defendants aided and abetted the substantive offenses by mail fraud by filing Federal and State in-

come tax returns in furtherance of a scheme to deprive the citizens of Kentucky of certain intangible rights and to obtain money and other things of value by false and fraudulent pretenses. The language of the counts tracked the statutory language of 18 U.S.C. § 1341, the mail fraud statute, but did not allege that the tax returns filed on behalf of Seton were false or fraudulent.

An indictment that sets forth the offense in statutory language is sufficient so long as that language " 'fully, directly, and expressly, without any uncertainty or ambiguity, set[s] forth all the elements necessary to constitute the offense intended to be punished.' " *United States v. Groff,* 643 F.2d 396, 401 (6th Cir.), *cert. denied,* 454 U.S. 828, 102 S.Ct. 121, 70 L.Ed.2d 103 (1981) (quoting *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)). A conviction under the mail fraud statute requires proof of an intent to execute a scheme to defraud and the mailing of a letter, etc., for the purpose of executing that scheme. *United States v. Valavanis,* 689 F.2d 626, 627 (6th Cir.1982). Gray and McNally reasoned that where, as here, a mail fraud offense was predicated upon the mailing of a document which a federal or state statute required to be mailed, the government shouldered the burden of proving an additional element of the offense, namely, that the actual document mailed was false and fraudulent. Accordingly, defendants asserted that the counts dismissed by the district court were legally insufficient because they failed to allege that the tax returns filed on behalf of Seton were false and fraudulent.

In *United States v. Curry,* 681 F.2d 406, 412 (5th Cir.1982), the Fifth Circuit considered the quantum of proof required in a mail fraud case predicated upon the mailing of a document which an individual must, in law, place or cause to be placed in the mail:

> It is true that, ordinarily, the mailing of documents which are themselves innocent may still constitute the crime of mail fraud if the documents are mailed in execution of a scheme to defraud. *Parr v. U.S.,* 363 U.S. 370, 80 S.Ct. 1171, 1183, 4 L.Ed.2d 1277 (1960); *U.S. v. Caldwell,* 544 F.2d 691, 696 (4th Cir.1976); *U.S. v. Reid,* 533 F.2d 1255, 1265 (D.C.Cir.1976). However, mailings of documents which are required by law to be mailed, and which are not themselves false and fraudulent, cannot be regarded as mailed for the purpose of executing a fraudulent scheme. *Parr v. U.S.* 80 S.Ct. at 1183.

Where the government charged mail fraud in connection with the mailing of a tax return, the indictment must specifically charge that the tax returns were themselves false and fraudulent.

The government argued that the indictment implicity alleged the falsity of the tax returns because count one, the conspiracy count, expressly charged that Seton's federal income tax returns were false. However, the section of count one that alleged that the returns were false was not specifically incorporated into the mail fraud counts. Although Federal Rule of Criminal Procedure 7(c) permits the government to incorporate in one count allegations made in another count, the incorporation must be express, not implicit. *United States v. Roberts,* 465 F.2d 1373, 1375 (6th Cir.1972); *United States v. Hajecate,* 683 F.2d 894, 901–02 (5th Cir.1982), *cert. denied,* 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 298 (1983).

For the reasons stated above, the defendants' convictions of counts one and four of the indictment are AFFIRMED. The district court's dismissal of counts two, three, five, six, seven and eight is also AFFIRMED.

NEESE, Senior (retired District) Judge, concurring in nos. 84–5400 and 84–5401 and dissenting in no. 84–5033.

I concur with the decision of the majority in affirming the respective convictions in nos. 84–5400 and 84–5401. However, I dissent respectfully from the majority's af-

firmance in no. 84–5033 of the dismissal of six counts of the pertinent indictment.

As to the latter, it has long been settled that there are two—and only two—elements of mail-fraud: (1) the existence of a scheme to defraud, and (2) the use of the mails for the purpose of executing that scheme. *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 262, 98 L.Ed. 435 (1954); *United States v. Bibby,* 752 F.2d 1116, 1125 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986); *Bender v. Southland Corp.,* 749 F.2d 1205, 1215–16 (6th Cir.1984). There is no justification in my view for the creation of a third element of this offense in situations where the mailing was required by law.

*Parr v. United States,* 363 U.S. 370, 390–92, 80 S.Ct. 1171, 1183–84, 4 L.Ed. 2d 1277 (1960), and *United States v. Curry,* 681 F.2d 406, 412 (5th Cir.1982), teach that, where legally-compelled mailings are involved, the Government may not meet its burden of proving the mails were used "for the purpose of executing" the scheme to defraud by showing merely that the mailings took place; instead, the prosecution must prove something more, such as, that the documents mailed were themselves false or fraudulent. This is so because mailings of documents which are required by law to be mailed, and which are not themselves false or fraudulent, cannot "be regarded as mailed for the purpose of executing a pilot or scheme to defraud." *Parr, supra,* 363 U.S. at 390, 80 S.Ct. at 1183.

When a person mails something which the law has mandated that he mail, the logical assumption is that he did so in obedience to law. Thus, to support a conviction for mail-fraud based on a legally-compelled mailing, the prosecution must show that the mailing occurred for the specific purpose of executing the scheme to defraud and not merely because the law required the mailing; otherwise, the Government has not met its burden of proving the

second element of the offense. *See United States v. Buckley,* 689 F.2d 893, 900 (9th Cir.1982) ("*Parr* involved a situation where the legally compelled mailings were not made in furtherance of a scheme to defraud.").

Neither *Parr* nor *Curry* concerned the sufficiency of an indictment; they dealt, rather, with the sufficiency of the evidence to sustain mail-fraud convictions. The counts before us which were dismissed allege the two essential elements of mail-fraud. Whether the prosecution will be able to prove the second such element, by showing that the tax returns were false or fraudulent, or by any other appropriate means, remains to be seen; but, I believe this is a matter of proof, not of pleading.