UNITED STATES of America, Appellee,
Cross–Appellant,

v.

Alfred COVINO, Defendant–Appellant,
Cross–Appellee.

Nos. 179, 278, Dockets 87–1170, 87–1181.

United States Court of Appeals,
Second Circuit.

Argued Sept. 15, 1987.

Decided Jan. 13, 1988.

Bruce A. Green, Asst. U.S. Atty., for the Southern District of New York, New York City (Rudolph W. Giuliani, U.S. Atty. for the Southern District of New York, New York City, Aaron R. Marcu, Asst. U.S. Atty., of counsel), for appellee, cross-appellant.

George J. Koelzer (Clarkson S. Fisher, Jr., Ober, Kaler, Grimes & Shriver, New York City, of counsel), for defendant-appellant, cross-appellee.

Before CARDAMONE, WINTER and MINER, Circuit Judges.

WINTER, Circuit Judge:

Alfred Covino appeals from convictions after a jury trial before Chief Judge Brieant under the Travel Act and for wire fraud. The government cross-appeals from the district court's acquittal after the jury had found Covino guilty of extortion in violation of the Hobbs Act. We affirm the Travel Act conviction, reverse the Hobbs Act acquittal, and reverse the wire fraud conviction.

## BACKGROUND

Counts One through Eight of the indictment accused Covino, a NYNEX employee, of extorting money and property from a NYNEX contractor in violation of the Hobbs Act, 18 U.S.C. § 1951 (1982). The jury convicted Covino on Counts One through Five and on Count Eight. The district judge, however, directed a judgment of acquittal because he concluded that there was insufficient evidence of a wrongful use of fear to establish a Hobbs Act violation. *United States v. Covino*, 652 F.Supp. 660, 667–68 (S.D.N.Y.1987).

Counts Nine through Sixteen of the indictment charged Covino with traveling in interstate commerce to promote or facilitate "bribery and related offenses in violation of New York State Penal Law Article 180," in violation of the Travel Act, 18 U.S.C. § 1952 (1982 & Supp. IV 1986). The jury convicted Covino on Counts Nine through Thirteen and on Count Sixteen.

Counts Seventeen through Twenty of the indictment accused Covino of wire fraud in violation of 18 U.S.C. § 1343 (1982). The jury convicted Covino on these four counts.

The evidence at trial disclosed the following. In December 1983, after a favorable history of employment with AT & T, Alfred Covino became Director of Network Services at NYNEX Mobile Communications Co. NYNEX provided mobile telephone services and was then involved in a race with a competitor to build "cell sites," small structures containing switching gear used to relay signals from cellular phones within specific geographic areas.

Great Northeastern Building and Management Corporation was a small, newly formed contracting firm that operated out of the house of its half-owner, Robert Brennan. Its regular employees consisted of Brennan as President and his partner Joseph Boyd as Vice President. Brennan's wife helped out as a bookkeeper. Great Northeastern had originally been hired by NYNEX to provide consulting services but later became the prime contractor for the construction of certain cell sites. NYNEX's business eventually accounted for roughly ninety percent of Great Northeastern's business. Great Northeastern was thus heavily dependent upon the favor of NYNEX.

As Director of Network Services, Covino had substantial, although not absolute, control over the selection, supervision and payment of contractors hired to build cell sites. Covino usually could not act for NYNEX without the formal approval of other NYNEX executives, but he could in practice allow or disallow claims for extra work, approve or disapprove invoices and materially aid Great Northeastern in obtaining cell site construction contracts.

At pertinent times, NYNEX had explicit written policies forbidding its employees from soliciting or receiving benefits from persons doing business with NYNEX. These policies did not deter Covino from taking advantage of his substantial power over Great Northeastern. In May 1984, he learned that a former employee of Great Northeastern had improperly billed $3,200 in telephone calls to a NYNEX credit card.

Covino showed these bills to Brennan and warned that if Covino's superior found out about them "it wouldn't look good" for Great Northeastern. Brennan offered to pay the bills, but Covino refused the offer, saying that he would "take care of them" himself.

Not long thereafter, Covino approached Brennan for help in building a sun deck for Covino's home in New Jersey. After being told by Covino to "keep in mind the phone bill," Brennan agreed to build the sun deck at a cut-rate price. Based upon plans Covino obtained from an architect (also a NYNEX subcontractor) who employed Covino's wife, Brennan built, not a sun deck, but an entire "Florida room" addition costing in excess of $20,000. To make it appear that he had actually paid for the addition, Covino asked Brennan to take a $15,000 check and then return to him the same amount in cash. Brennan declined to participate in this cover-up but nevertheless did not ask for any payment for constructing the Florida room. Later in 1984, Covino induced Brennan to arrange and pay for additional work on Covino's house, including repairs to a sump pump, refacing of a fireplace, construction of a closet in the garage, addition of a porch on the rear of the house, and construction of a deck on the Florida room.

Its consulting contract with NYNEX having been terminated in the fall of 1984, Great Northeastern became almost totally dependent upon its construction contracts with NYNEX for its commercial survival. In June 1984, Great Northeastern had NYNEX contracts for $200,000 of work in the Boston area, and a month later the amount was increased to $500,000. This work was to be done in accordance with letters of authorization to be issued by Covino. In November 1984, Great Northeastern received another $500,000 contract for work in New York.

Because of Covino's power in selecting contractors, determining contract amounts, approving billing requests, and authorizing cost-plus-profit change order payments, Great Northeastern's commercial dependency on NYNEX was largely a dependency on Covino's favor. Brennan testified that he feared that if he refused to accede to Covino's demands, Covino would use his power to drive Great Northeastern out of business by withholding payments on completed work and by denying Great Northeastern any new construction work for NYNEX.

In the fall of 1984, Covino shifted his demands from services to cash. Near the end of December 1984, Covino even drew up a written schedule of payments, totalling $100,000. He explained to Brennan that $5 million of construction contracts, a "once-in-a-lifetime situation," were coming up and that he, Covino, wanted his "share." Covino then asked Brennan if he wanted his "share." In response to Covino's requests, Brennan made cash payments totalling $85,000 between January and April 1985.

## DISCUSSION

### 1. *The Hobbs Act Acquittal*

After the jury convicted Covino on six of the eight counts charging violations of the Hobbs Act, Covino moved for acquittal pursuant to Fed.R.Crim.P. 29(c). In granting the motion, the district court stated that "there was not sufficient evidence of wrongful use of fear to uphold the jury's verdict. Indeed, there was *no* evidence of conduct by anybody involving a threat." *Covino*, 652 F.Supp. at 667. The government cross-appeals from this acquittal.

■ Covino argues that the double jeopardy clause of the fifth amendment bars any appeal by the government after a fact-based acquittal. His contention, however, is contrary to a well-settled rule in the courts of appeals that the government may appeal from a trial judge's acquittal of a defendant for insufficiency of the evidence after a jury has returned a verdict of guilty. *See, e.g., United States v. De Garces*, 518 F.2d 1156, 1159 (2d Cir.1975). The Supreme Court has never ruled directly on this question, and it has been careful to avoid even an implication that its double jeopardy decisions undermine this rule. *See United States v. Scott*, 437 U.S. 82, 91

& n. 7, 98 S.Ct. 2187, 2193, n. 7 (1978); *United States v. Martinez*, 763 F.2d 1297, 1310 (11th Cir.1985) (reviewing cases and finding "no support in any Supreme Court or circuit court decision" for the view that fact-based acquittal after jury verdict of guilty may not be appealed).

Turning to the merits of the government's cross-appeal, we conclude that sufficient evidence existed to support Covino's conviction for extortion under the Hobbs Act. The Hobbs Act prohibits obstruction, delay or interference with interstate commerce by means of extortion. Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

In the view of the district court, unless a Hobbs Act defendant threatens to hurt his or her victim, the forthcoming payment is only commercial bribery, the essential element of which is "pay me and be assisted," but not extortion, the essential element of which is "pay me or be precluded." *Covino*, 652 F.Supp. at 667 (quoting *United States v. Capo*, 791 F.2d 1054, 1073 (2d Cir.1986) (Pratt, J., dissenting)). As was made clear by *United States v. Capo*, 817 F.2d 947 (2d Cir.1987) (in banc), the district court's statement of the law is essentially correct.[1] We disagree, however, with his view of the sufficiency of the evidence in the instant case.

■ In a prosecution for extortion by the wrongful use of the fear of economic loss, the government must prove that the victim reasonably believed two things: "first, that the defendant had the power to harm the victim, and second, that the defendant would exploit that power to the victim's detriment." *Id.* at 951. A direct threat of future harm is not necessary to establish the reasonableness of the alleged victim's

fear. *See United States v. Billups*, 692 F.2d 320, 330–31 (4th Cir.1982) (fear need not be consequence of direct or implicit threat by defendant, but need only be reasonable under circumstances), *cert. denied*, 464 U.S. 820, 104 S.Ct. 84, 78 L.Ed.2d 93 (1983); *United States v. Duhon*, 565 F.2d 345, 352 (5th Cir.) (intent to extort may be inferred from ambiguous statements), *cert. denied*, 435 U.S. 952, 98 S.Ct. 1580, 58 L.Ed.2d 802 (1978).

■ Viewed in the light most favorable to the government, the evidence of fear of economic loss was sufficient to support the jury's guilty verdict. While Covino's power over Great Northeastern's relationship with NYNEX was not absolute, Covino wielded substantial authority in contractor selection, work authorization, and payment approval. *See Covino*, 652 F.Supp. at 663–64. He was thus positioned to injure as well as to aid Great Northeastern. In contrast, the defendants in *Capo* were shown to have power only to aid those from whom they accepted money, not to harm them. 817 F.2d at 952–53. Brennan's view of Covino's power over Great Northeastern— "I was afraid if I resisted we would lose our contract," 652 F.Supp. at 663—was therefore reasonable under the circumstances.

It was also reasonable for Brennan to believe that Covino was prepared to use his power to harm Great Northeastern if Brennan did not comply with Covino's demands. In particular, Covino's early statement that it would not "look good" to Covino's superiors if they were to find out about the phone bills, followed by a later reminder to "keep in mind the phone bills" when asking Brennan to build the sun deck/Florida room, would reasonably be interpreted as threats. The same is true of Covino's subsequent observation that he wanted his "share" of future NYNEX expenditures, followed by

---

**1.** To the extent the district court adopted the view that a Hobbs Act violation cannot involve future, as opposed to existing, business relationships, *see Covino*, 652 F.Supp. at 667, we do not agree. "This circuit's case law on extortion by wrongful use of fear of economic loss is comprised of cases in which the evidence was plain that nonpayment would result in preclusion

from or diminished opportunity for some existing or *potential* economic benefit." *Capo*, 817 F.2d at 951 (emphasis added); *see also United States v. Brecht*, 540 F.2d 45, 52 (2d Cir.1976) (threat to deny opportunity to obtain future contract), *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977).

his inquiry as to whether Brennan wanted to do his "share" in the context of Covino's increasing demands for services and cash. Again, in contrast, the defendants in *Capo* never purported to be able to deny economic benefits to those who were paying them. 817 F.2d at 952–53. We therefore reverse the judgment of acquittal on the Hobbs Act conviction and remand for sentencing.

### 2. *The Travel Act Conviction*

Covino claims that his Travel Act conviction must be reversed because the portions of the indictment alleging Travel Act violations were fatally defective and because the evidence was insufficient to support a guilty verdict.

The indictment identifies the state crimes facilitated by Covino's interstate travel as "bribery and related offenses in violation of New York State Penal Law Article 180." Covino claims that the use of the phrase "related offenses" is so vague and ambiguous that it is impossible to know exactly what the grand jury intended to charge and that, therefore, these counts fail to allege any federal crime. He also argues that the Travel Act counts failed to apprise him sufficiently of the charges against him or to eliminate any possible risk of double jeopardy in violation of his rights under the fifth and sixth amendments. We believe these arguments are without merit.

Covino did not raise his challenge to the indictment until after the close of the government's case, a failure that waives the issue under Fed.R.Crim.P. 12(b)(2), unless the indictment fails to show jurisdiction or to charge a federal offense. *United States v. Galgano*, 281 F.2d 908, 911 (2d Cir.1960), *cert. denied*, 366 U.S. 967, 81 S.Ct. 1929, 6 L.Ed.2d 1257 (1961). Covino's characterization of the indictment as so vague as not to allege an identifiable offense seems to us a transparently desperate attempt to rebut a valid claim of waiver. Nevertheless, we will address it.

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquit-

tal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). "An indictment need only track the language of the statute and, if necessary to apprise the defendant 'of the nature of the accusation against him,' ... state time and place in approximate terms." *United States v. Bagaric*, 706 F.2d 42, 61 (2d Cir.) (quoting *Russell v. United States*, 369 U.S. 749, 765, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962)), *cert. denied*, 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128 (1983).

█ Covino argues that the phrase "and related offenses" is impermissibly vague. We note at the outset that Article 180 is entitled "Bribery Not Involving Public Servants, and Related Offenses." It is thus clear that the phrase "related offenses" as used in the indictment does not go beyond the four corners of Article 180 itself. Covino claims, however, that an "educated guess" is required to conclude that the only relevant subsections of Article 180 are "Commercial bribe receiving in the first degree," N.Y. Penal Law § 180.08 (McKinney Supp.1988), and "Commercial bribe receiving in the second degree," N.Y. Penal Law § 180.05 (McKinney Supp.1988). This argument is meritless because the indictment detailed each receipt of cash or services by Covino from Brennan as well as the relationship of these bribes to NYNEX contracts. No one in possession of such detail could conceivably view the charges as involving the other subsections of Article 180, which prohibit the bribery of labor or sports officials, the fixing of sports contests and rent gouging.

Covino's double jeopardy apprehensions are thus also without merit. Indeed, nothing prevents Covino from raising the present conviction as a bar to further prosecution for his activities involving Great Northeastern as a federal Travel Act offense predicated on *any* subsection of Article 180.

Covino also claims that there was insufficient evidence of an "agreement" or "understanding" that the receipt of bribes would "influence his conduct in relation to

his employer's ... affairs," N.Y. Penal Law § 180.05, as required for convictions under New York's commercial bribery statutes. Because the agreement or understanding required under New York's commercial bribery statutes is indistinguishable from a conspiratorial agreement, such an agreement or understanding may be proven by circumstantial evidence. *Cf. United States v. Young,* 745 F.2d 733, 762 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). Here, for reasons amplified in our discussion of the Hobbs Act issues, there was more than ample evidence from which a rational jury could find an understanding or agreement that cash and services were solicited and paid so that Covino would help Great Northeastern get a share of NYNEX's business.

Accordingly, we affirm Covino's Travel Act conviction.

### 3. *The Wire Fraud Conviction*

■ The portion of the indictment pertinent to wire fraud charged Covino with:

11. ... violat[ing] his fiduciary duty to NYNEX Communications, by concealing information, to wit, his receipt of money and property from the President of Great Northeastern, which information was material to the conduct of the business of NYNEX Communications.

12. It was a further part of the scheme to defraud NYNEX Communications that defendant ALFRED COVINO would and did violate his fiduciary duty to NYNEX Communications by depriving NYNEX Communications of his loyal unbiased services in the course of approving payments by NYNEX Communications to Great Northeastern.

The charge given by Chief Judge Brieant tracked the theory of the indictment and stated in pertinent part:

The essential contention here on which these counts are based is that the defendant knowingly and willfully did not disclose to his employer, when he was approving vouchers or contracts for Great Northeastern, that he did not tell NYNEX Mobile Communications Company the fact that he had been receiving money and property or goods or services from Great Northeastern or its president Mr. Brennan. And the government also contends that the defendant had a fiduciary duty, a duty of loyalty which every employee has to his employer, such that the defendant was under an obligation not to accept cash or property from contractors that do business with NYNEX, and that this obligation not to accept cash or property arises out of his employment and out of an established NYNEX policy against such payment.

If you find beyond a reasonable doubt that the defendant, while an employee of NYNEX having actual knowledge of the corporate policy against such payment, if he did, received cash or property in breach of his duty not to receive cash or property from people doing business with the company, or as a part of a scheme to defraud NYNEX of its rights to have its business conducted fairly and honestly by its employee Mr. Covino, and then subsequently, the defendant concealed or failed to disclose that information to his employer, and that the information is material, then you may find that the defendant made a false representation for purposes of the first element of the wire fraud act.

It is not a part of any of these charges that Mr. Covino caused overpayment of Great Northeastern or administered the contract unfairly or incorrectly, insofar as NYNEX is concerned. That is not a part of the charges here. You may assume for purposes of your deliberations that the telephone company received full value on all its construction contracts with Great Northeastern, as, indeed, it probably did. And that has nothing to do with the crimes charged here, though it is a fact that you can consider, insofar as concerns reaching a decision as to what the knowledge and intentions of the parties were at the time they acted, and particularly what the knowledge and intent of Mr. Covino was.

The theory of the indictment and the charge to the jury were based on decisions

in this circuit holding that it constituted wire or mail fraud for an employee to breach a duty to his or her employer and to fail to inform the employer of his or her breach. *See United States v. Weiss*, 752 F.2d 777 (2d Cir.), *cert. denied*, 474 U.S. 944, 406 S.Ct. 308, 88 L.Ed.2d 285 (1985). Covino contends, however, that his conviction may not stand in light of the Supreme Court's intervening decision in *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987).

*McNally* involved a scheme by which an insurance agency selected to procure insurance for the State of Kentucky agreed to share its commissions with other insurance agencies designated by the chairman of the state Democratic Party. The defendants, who participated in this scheme, were prosecuted for mail fraud. The element of deceit or fraud lay in the defendants' failure to disclose this scheme to persons in state government whose actions or deliberations might have been affected by such information. The prosecution was not required to prove that the Commonwealth of Kentucky, the victim of the alleged fraud, had actually been deprived of any money or property. Nor was there any claim that the Commonwealth would have paid a lower premium or secured better insurance coverage in the absence of the scheme. *Id.*, 107 S.Ct. at 2882. The Court of Appeals for the Sixth Circuit affirmed the convictions. *United States v. Gray*, 790 F.2d 1290 (6th Cir.1986) (per curiam).

The Supreme Court reversed, holding that the legislative history of the mail fraud statute indicated that Congress intended Section 1341's application to be "limited in scope to the protection of property rights." 107 S.Ct. at 2881. The Court declined to construe the statute in a way that "involves the Federal Government in setting standards of disclosure and good government," *id.*, and held that mail fraud requires a finding that the victim be defrauded of money or property. Covino contends that because the wire fraud and mail fraud statutes are construed identically, *McNally* requires that his conviction be reversed. We agree.

The indictment and charge in the instant matter neither alleged nor asked the jury to find that NYNEX was defrauded of money or property. The conviction on the wire fraud counts thus rested on Covino's failure to inform NYNEX that he was soliciting and receiving money and services from Great Northeastern, not that he was defrauding NYNEX itself of its property. But for the fact that state government was involved in *McNally*, this was precisely the legal theory rejected by the Supreme Court. As described by the Court, the jury instructions in *McNally* allowed the jury to convict the defendants of mail fraud if it made

> either of two sets of findings: (1) that Hunt had *de facto* control over the award of the workmen's compensation insurance contract to Wombwell from 1975 to 1979; that he directed payments of commissions from this contract to Seton, an entity in which he had an ownership interest, without disclosing that interest to persons in state government whose actions or deliberations could have been affected by the disclosure; ... or (2) that Gray ... had supervisory authority regarding the Commonwealth's workmen's compensation insurance at a time when Seton received commissions; that Gray had an ownership interest in Seton and did not disclose that interest to persons in state government whose actions or deliberations could have been affected by that disclosure ....

*Id.*, 107 S.Ct. at 2878–79. A simple substitution of names and descriptions of contracts would transform these findings into a precise description of the legal theory of Covino's conviction.

Our conclusion is not altered by the recent decision in *Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), decided after argument in the present case. In that case, an employee of the *Wall Street Journal* engaged in a scheme that deprived the paper of its acknowledged property rights in confidential information produced in the regular course of its business, an act that the Court analogized to embezzlement. *Id.*, 108 S.Ct. at 321. Here, Covino was charged with

depriving NYNEX of material information concerning breaches of his fiduciary duty, not with depriving it of property.[2] We therefore reverse the wire fraud counts.

### CONCLUSION

For the reasons stated above, the judgment of acquittal entered by the district court on the counts under the Hobbs Act, 18 U.S.C. § 1951 (Counts One, Two, Three, Four, Five and Eight), is reversed and remanded for sentencing. The conviction on the Travel Act counts, 18 U.S.C. § 1952 (Counts Nine, Ten, Eleven, Twelve, Thirteen and Sixteen), is affirmed. Finally, the conviction on the wire fraud counts, 18 U.S.C. § 1343 (Counts Seventeen, Eighteen, Nineteen and Twenty), is reversed.

---

2. The government has on appeal speculated upon theories that might render the facts in this case consistent with *McNally*. However, the indictment clearly did not charge Covino with defrauding NYNEX of money or property, and we need not decide whether these uncharged matters are crimes.