**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony STACK, Defendant–Appellant.**

No. 87–1190.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 17, 1988.

Decided Aug. 2, 1988.

Arthur J. Tarnow (argued), Detroit, Mich., for defendant-appellant.

F. William Soisson, Asst. U.S. Atty., Detroit, Mich., Sheldon N. Light, Patricia G. Blake (argued), for plaintiff-appellee.

Before MARTIN, JONES and NORRIS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Defendant, Anthony Stack, appeals his convictions for mail fraud and interstate transportation of a security taken by fraud, arising from his participation in a scheme to obtain kickbacks.

Defendant was the controller of corporate taxes for K–Mart Corporation. When K–Mart decided to participate in the Targeted Jobs Tax Credit Program, defendant recommended Martin Gulewicz, owner of Business Tax System Specialists, to administer the program for K–Mart stores in three regions. Gulewicz was awarded a contract which provided that he would receive a percentage of the tax credits earned by K–Mart as compensation for his services.

A year later, in July 1983, defendant approached Gulewicz and asked him for money, and, in order to keep his contract with K–Mart, Gulewicz mailed a $2,000 check to defendant. When this check bounced, Gulewicz replaced it with a personal check.

Gulewicz's performance was not satisfactory, and, at the urging of defendant's associates, a letter terminating the service agreement was mailed to Gulewicz on Au-

gust 17, 1983. Defendant arranged for the remaining compensation due to Gulewicz under the contract to be delivered to George Thomas, defendant's attorney. Defendant instructed Gulewicz that in order to receive two K–Mart checks for $28,000 and $41,000, Gulewicz would have to give Thomas two checks for $10,000 and $15,-000. These exchanges were subsequently made in Thomas' office. Pursuant to defendant's instructions, all of the checks from Gulewicz were made payable to TRC, Inc. (a corporation allegedly formed by defendant), and were deposited to TRC's account at E.F. Hutton.

Gulewicz eventually told officers at K–Mart about the kickbacks. After an internal investigation, the matter was referred to the FBI and resulted in defendant's indictment.

Defendant was charged with two counts of mail fraud, in violation of 18 U.S.C. § 1341,[1] and one count of interstate transportation of a security taken by fraud, in violation of 18 U.S.C. § 2314.[2] The two mail fraud counts alleged use of the mail in causing Gulewicz to mail the $2,000 check, and in causing the termination letter to be mailed to Gulewicz. The interstate transportation of a security count alleged that defendant caused the money deposited to the E.F. Hutton account in Michigan to be transferred by wire to E.F. Hutton offices in New York, knowing that the money was obtained by fraud. The theory of defense was that defendant never received any of the money and had no connection with TRC. The jury found defendant guilty of all three counts.

1. The mail fraud statute, 18 U.S.C. § 1341, provides in relevant part:

   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting to do so, ... knowingly causes to be delivered by mail ... any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

2. 18 U.S.C. § 2314 provides:

   Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or

■ On appeal, defendant contends that his mail fraud convictions should be reversed because the indictment and jury instructions permitted the jury to convict him of a scheme to defraud K–Mart of intangible rights, a type of fraud not cognizable under the mail fraud statute. After defendant filed a notice of appeal to this court, the Supreme Court held in *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987), that application of 18 U.S.C. § 1341 is limited to property rights, and does not reach schemes to defraud persons of intangible rights. The Supreme Court's construction of 18 U.S.C. § 1341 applies retroactively to this case, which was pending on direct review when *McNally* was decided. *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). The government conceded as much at oral argument.

■ Our inquiry on appeal then is whether the mail fraud counts were charged, tried and submitted to the jury on a theory of depriving K–Mart of intangible rights, or on a theory of depriving another of property rights. The indictment alleged "a scheme and artifice to defraud K–Mart Corporation of the right to have its business conducted honestly, fairly, impartially and free of corruption, collusion, partiality, disloyalty, dishonesty and fraud and to obtain money by means of false and fraudulent pretenses and representations." The jury was charged that:

   To establish that a Defendant is guilty of mail fraud, the Government must

   more, knowing the same to have been stolen, converted or taken by fraud; or
   Whoever, having devised or intended to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more;
   ...

   · · · · ·

   Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

prove beyond a reasonable doubt, one, that the Defendant wilfully and knowingly devised a scheme or artifice to defraud or for obtaining money or property by means of false pretenses, representations or promises....

... [T]he words scheme and artifice, as used in these instructions, [include] any plan or course of action intended to deceive others or to deprive an employer, such as K–Mart, of an employee's honest and faithful performance of his duties. Any actions designed to deprive an employer of his right to have his business conducted honestly, fairly, impartially, free of corruption, collusion, partiality, disloyalty, dishonesty and fraud may constitute a fraud within the meaning of the mail fraud statute if such actions are done knowingly and with an intent to defraud.

. . . .

To act with intent to defraud means to act knowingly and with a specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to one's self.

The government argues that the kickbacks were the basis of the prosecution and that they satisfy the property requirement of *McNally*. But the record reveals that the government presented only a theory of depriving K–Mart of intangible rights. There is no suggestion in the record that K–Mart was deprived of any property, or that in the absence of the kickback scheme K–Mart could have negotiated a more favorable contract. As the government pointed out in closing argument, defendant did not ask for any kickbacks until almost a year after Gulewicz began performing under the contract.

It might be possible to satisfy the requirements of *McNally* by proof that Gulewicz was defrauded of money, but this theory was not charged or submitted to the jury. The jury was not asked to determine whether defendant obtained the money from Gulewicz by misrepresenting that the kickbacks were necessary in order to keep the contract with K–Mart or to receive his compensation. In fact, in rebuttal argument, the Assistant United States Attorney specifically told the jury that "[t]he scheme in this case is the acceptance by [defendant] of kickbacks in violation of the duties owed to K–Mart, not extortion from Gulewicz."

We conclude that the scheme to defraud K–Mart of intangible rights as charged in the indictment fails to state a crime under 18 U.S.C. § 1341, and the jury instructions permitted the jury to convict defendant for conduct which is not an offense. Accordingly, the convictions of mail fraud on Counts One and Two are reversed. We note that since the conviction is not reversed due to insufficient evidence the government is not precluded from indicting defendant on a permissible theory of mail fraud. *Montana v. Hall*, 481 U.S. 400, 107 S.Ct. 1825, 1826–27, 95 L.Ed.2d 354 (1987).

■ Defendant argues that the interpretation of scheme to defraud in *McNally* also requires reversal of his conviction under 18 U.S.C. § 2314 of interstate transportation of a security knowing that it was taken by fraud.

Count Three of the indictment charged defendant with causing a security valued in excess of $5,000 to be transported in interstate commerce, by means of a wire transfer of credits, "knowing said security to have been taken by fraud." It was stipulated that the money received from Gulewicz and deposited to the TRC account was a security and moved in interstate commerce. The only element of the offense for the jury to decide was whether defendant knew the money was obtained by fraud. The jury was instructed that:

Count Three is a different charge and the law applicable to Count Three provides that whoever transports in interstate commerce securities or money of a value of $5,000 or more, knowing the same to have been stolen, embezzled, converted or taken by fraud, shall be guilty of an offense against the United States.

Now, in order to establish the Defendant was guilty of the events charged in Count Three, the Government must prove beyond a reasonable doubt, one,

that the Defendant wilfully and knowingly devised a scheme or artifice to defraud, or for obtaining money or property by fraudulent means; two, that the Defendant caused to be transmitted in interstate commerce a wire communication or a wire transfer of credits; three, that the credits transferred constituted the proceeds of the fraudulent scheme; and, four, that the credits had a value in excess of $5,000.

The principles of fraud and definition of scheme to defraud are the same for an offense under the mail fraud statute and the interstate transportation statute....

Defendant construes *McNally* to mean that a scheme to defraud another of intangible rights can never be actionable fraud. Because the scheme to defraud K–Mart of intangible rights was the basis of both the mail fraud and interstate transportation counts, defendant reasons that his conviction on Count Three cannot stand.

We disagree with defendant's contention that a *McNally* problem is present in Count Three. The jury was properly instructed that, in order to convict defendant, they had to find that he obtained property of a value in excess of $5,000 as a result of his fraudulent scheme.

The government contends that the interpretation of scheme to defraud does not affect defendant's conviction on Count Three because defendant was only charged with knowledge that the money was taken by fraud. Knowledge may be inferred from defendant's conduct and surrounding circumstances. *United States v. Holland,* 831 F.2d 717, 721 (7th Cir.1987); *United States v. Grainger,* 701 F.2d 308, 311 (4th Cir.), *cert. denied,* 461 U.S. 947, 103 S.Ct. 2129, 77 L.Ed.2d 1307 (1983). The government suggests that defendant's conduct in handling all of the transactions through his attorney and in hiding the money in the TRC account shows that he was well aware that the money was obtained by fraud.

The fact remains, however, that the jury was not instructed to find that defendant had knowledge that the money was taken by fraud. Instead, the jury was instructed, in accordance with the government's theory at trial, under the second paragraph of

18 U.S.C. § 2314, that the government must prove that defendant devised a scheme or artifice to defraud. The jury was then referred to the instructions on the mail fraud counts, that the scheme to defraud in this case was a scheme to defraud K–Mart of intangible rights. Thus, the jury was led to believe that all they had to find was that defendant devised a scheme to defraud K–Mart of its right to honest employment in order to convict defendant on Count Three. This theory ignores the fact that the money could not have been obtained by defrauding K–Mart because K–Mart was not the owner of the kickbacks. Under the evidence introduced at trial, a proper instruction would have been whether defendant knew the money was obtained by defrauding Gulewicz.

Because of the confusion between the indictment, the evidence at trial, and the theory argued and submitted to the jury, we agree with defendant that Count Three was improperly submitted. Accordingly, defendant's conviction on Count Three is reversed and remanded for a new trial.

In light of our disposition of this case, we need not address defendant's remaining contention that he was denied effective assistance of counsel. The judgment of the district court is reversed, and this cause is remanded for further proceedings according to law and consistent with this opinion.