902 F.2d 35
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James W. BERNDT, Defendant-Appellant.
 No. 89-2245.
 United States Court of Appeals, Sixth Circuit.
 May 7, 1990.
 
 Before KEITH and MILBURN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant James W. Berndt appeals the district court's denial of his motion to dismiss the charges against him on double jeopardy grounds. The district court denied the motion after finding that the Assistant United States Attorney did not provoke the defendant into moving for a mistrial. For the reasons that follow, we affirm.
 
 I.
 
 2
 On May 17, 1989, the Grand Jury of the Eastern District of Michigan named Berndt in a one-count indictment, charging him with intimidating a federal witness in violation of 18 U.S.C. Secs. 1512(b)(1) and (3). The witness, an informant, was to testify in the trial of Lyle Copeland, who was charged in another indictment with drug trafficking. Copeland was an acquaintance of Berndt.
 
 
 3
 Berndt's jury trial on the intimidation charge commenced on August 14, 1989. A jury was selected, opening statements were made, and Assistant United States Attorney Janet Parker called Lynsey Losinski as the government's first witness. Parker began to question Losinski about Berndt's relationship with Copeland. During the examination, the following exchange took place:
 
 
 4
 Q: Directing your attention to sometime between February and April of 1989, do you recall an occasion sometime during that time frame when you, Mr. Copeland, Mr. Berndt and others were together in a house in Alpena [Michigan] watching a basketball game?
 
 
 5
 A: Yes.
 
 
 6
 Q: Do you recall going into a bedroom?
 
 
 7
 A: Yes, I do.
 
 
 8
 Q: What did you see on that occasion?
 
 
 9
 A: I saw Mr. Berndt and Lyle [Copeland] had some coke on a mirror and they were dividing it up.
 
 
 10
 J.A. 29.
 
 
 11
 Berndt immediately objected and moved for a mistrial. After a sidebar conference, the district court granted Berndt's motion for a mistrial on the ground that Parker's question and Losinski's response unfairly depicted Berndt as a drug distributor. The district court reserved the issue of whether Parker's questioning was intended to provoke Berndt into moving for a mistrial.
 
 
 12
 Berndt subsequently moved the district court to dismiss the intimidation charges against him on double jeopardy grounds. He argued that Parker's conduct constituted prosecutorial overreaching intended to goad him into seeking a mistrial, and therefore, the government could not place him in jeopardy again. The government responded that Parker did not intend to provoke Berndt's motion.
 
 
 13
 On October 19, 1989, the district court heard oral argument on Berndt's motion and then denied it. The district court found that Parker's questioning was not intended to provoke Berndt's motion for a mistrial.
 
 II.
 
 14
 This appeal involves "the 'mistrial' branch of double jeopardy law." United States v. Davis, 873 F.2d 900, 906 (6th Cir.), cert. denied, 110 S.Ct. 292 (1989). The leading case in the "prosecutorial overreaching" area of this branch of the law is Oregon v. Kennedy, 456 U.S. 667 (1982), where the Court held that if a prosecutor engages in conduct that is "intended to 'goad' the defendant into moving for a mistrial [the defendant can] raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion [for a mistrial]." 456 U.S. at 676.
 
 
 15
 In United States v. Thomas, 728 F.2d 313 (6th Cir.1984), the parties agreed that they would not refer to Thomas' fourteen-year-old convictions for tax evasion. At trial, however, the government's chief witness mentioned the convictions. Thomas successfully moved for a mistrial, then argued that Oregon barred his retrial. We disagreed, holding that the failure to prepare the witness not to mention the convictions was, at most, negligence. Id. at 318. We also explained:
 
 
 16
 The line of questioning was not such that the prosecutor could be said to have been inviting the answer. Nor is there any evidence to suggest that the prosecutor encouraged the witness or intentionally failed to notify him knowing that he would mention the conviction.
 
 
 17
 Moreover, the appellant's suggestion that the prosecutor orchestrated the whole thing seems unclear at best.
 
 
 18
 Id. (emphasis in original).
 
 
 19
 In Oregon, the Supreme Court explained that the "prosecutorial intent" standard "merely calls for the [district] court to make a finding of fact." 456 U.S. at 675. In this case, the district court found that Parker's conduct was not intended to provoke Berndt's motion to dismiss. In so ruling, the district court expressly stated that it found Parker's explanation of the incident to be credible.
 
 
 20
 Berndt argues that the facts in this case establish prosecutorial overreaching. He asserts that the Assistant United States Attorney had inadequate time to prepare for trial, and in a pretrial conference, the prosecutor had "clearly indicated" that the improper testimony would not be elicited.
 
 
 21
 Even were we to give de novo review to these bare, exaggerated assertions, they would still fail to justify reversing the district court's denial of Berndt's motion. The record indicates that Parker was busy, but it provides no basis for the claim that she had inadequate time to prepare for trial. Similarly, there is no basis for the claim that Parker "clearly indicated" that the improper testimony would not be elicited. Rather, the record suggests that most of Berndt's complaints arose from a misunderstanding that was generated in a brief discussion between adversaries the morning of trial.
 
 
 22
 More significantly, as in Thomas, Parker's line of questioning cannot be characterized as "goading" or otherwise intended to invite Losinski's response. Nor is there any evidence that Parker encouraged the response in question, or that she knew that Losinski would give that response and intentionally failed to warn against it, or that she in any way "orchestrated the whole thing." Thomas, 728 F.2d at 318.[1]
 
 III
 
 23
 We agree with the district court that Parker's conduct was not intended to provoke Berndt's motion for a mistrial. Accordingly, for the foregoing reasons, the judgment of the district court denying Berndt's motion to dismiss the charge against him on double jeopardy grounds is AFFIRMED.
 
 
 
 [1]
 In this regard, we note that Parker might have expected in good faith that she would not encounter any insurmountable obstacles in having Losinski's testimony introduced. Losinski testified that she saw Berndt and Copeland dividing some cocaine on a mirror in a bedroom. The district court interpreted her testimony as depicting Berndt as a cocaine distributor, as it showed that "[t]hey're cutting it up between each other, that's two people, that's distribution, distributing it between each other." J.A. 30. Based upon its interpretation, the district court found Losinski's testimony to be "atrocious."
 Yet Losinski's testimony is subject to various interpretations because it is incomplete and ambiguous. For example, Losinski gave no indication of how much cocaine the two had on the mirror, or what type of mirror it was, or how they were dividing it. Perhaps she would have testified that she saw that they had only a very small amount of cocaine that they were dividing for personal use. Thus, it is arguable whether Losinski's testimony depicted the two as being involved in drug distribution. We do not suggest that the district court erred in granting Berndt's motion for a mistrial. Rather, we simply point out that even if Parker had expected Losinski might give the response in question, it does not follow that she sought to goad Berndt into moving for a mistrial, because while the testimony was highly disfavorable to Berndt, it was not "atrocious" per se and instead, arguably admissible, though we express no opinion as to whether or not it was admissible.